## BYRD *vs.* THE STATE OF GEORGIA.

1. The acts and conduct of one accomplice during the pendency of the wrongful act, not only in its perpetration, but also in its subsequent concealment, are admissible against the other. So also are his sayings pending the common criminal enterprise.
2. A confession of larceny of meat by an employé, induced by a statement from his employer that " if he would bring up the meat, there was a probability the whole matter could be settled," comes within the prohibition contained in section 3793 of the Code, and should not have been admitted.
3. The offence was not made out without the admission of the confessions, and a new trial is ordered.

Criminal Law. Confessions. Accomplice. Evidence. Before Judge HARRIS. Campbell Superior Court. August Term, 1881.

Reported in the decision.

T. W. & GEORGE LATHAM; ROAN & ROSSER, for plaintiff in error.

H. M. REID, solicitor general, for the state.

SPEER, Justice.

Byrd was charged with the offence of larceny from the house. On a trial he was found guilty by the jury. A motion for new trial was made, which was overruled, and he excepted. The grounds of the motion were:

(1.) The admission in evidence of certain acts and conduct of one Tom Betts, who was charged as an accomplice and principal in said offence.

(2.) The admission in evidence of certain confessions of Byrd, the accused, given in under the circumstances detailed in the record.

(3.) Exceptions to certain portions of the charge of the court as given to the jury on the trial.

1. Betts and the accused were charged as accomplices in this offence. Betts, as the principal, and the accused as aiding and abetting. The evidence in the record shows them together at the place and time when the alleged larceny was said to have been committed; that they were in the store and near the place where the meat alleged to have been stolen was located; that Betts was seen to leave the store with a sack and something in it, and placed it in a wagon in which both he and the accused, with others, returned home after night; that this occurred on Saturday evening, and on Monday morning when officers with a search warrant were approaching the houses of defendants, that Betts was seen to leave his house and go around with something under his arm wrapped in a cloth.

*Prima facie* under this proof, and during the pendency of the wrongful act, not only in its perpetration but in the effort at concealment, the act and conduct of one accomplice is admissible against the other, as are also his sayings pending the common criminal enterprise. They go to establish his guilt; and if the other is shown to have aided and abetted the offence, they are evidence of his guilt, for the act of one is the act of both when the common criminal intent is established. Hopkins' Code, 536.

2–3. Were the admissions or confessions of the accused admissible under the circumstances as shown in the record? William Johnson, by whom these confessions were proved, was the proprietor of the place on which the accused and Betts lived, and they were in his employment. Johnson testified that on the morning the officers were there to look for the stolen meat, " he heard a noise near his back door, that he went out and found William Jackson (the prosecutor) and a bailiff talking to the defendants. They were talking about the meat which Jackson claimed was stolen from him the Saturday evening before, and accused defendants of it, but they denied it; that Jackson and the bailiff then left, but the bailiff returned with a search warrant and searched the premises of defendant and found

nothing; that he (witness) then had a talk with Betts, the accused, and told him "it would be best for them to bring up the meat, that if they would do so there might be and there was a probability that the whole matter could be settled;" but they denied all knowledge of the affair. That he had another talk with defendant, Byrd, and told him "it would be best for him to bring up the meat, that if he would do so (as Tom Betts had already brought up his meat) it was probable the whole matter could be compromised;" that the accused said nothing, but after he left, the accused sent word he would send up the meat; that witness sent him word he would not receive it unless he brought it himself; that the accused then brought one ham weighing twelve or thirteen pounds. Witness did not know it was Jackson's meat; saw nothing to distinguish it from other hams. When the ham was returned, witness saw Jackson and settled the whole matter by paying him the money for the ham he claimed to have lost. When the accused returned the ham, witness said to accused, "this is the meat you got at Jackson's"; he answered "it was the meat."

The rule upon the subject of the admissibility of confessions is prescribed in our Code: "Confessions induced by another by the slightest hope of benefit or the remotest fear of injury, are inadmissible as evidence." Code, §3793.

Here the accused had denied positively any knowledge of the affair, or having the meat, but when assured by the employer on two several occasions, "if he would bring up the meat there was a probability the whole matter could be compromised and settled," he is induced to act and speak. We think the confession (so far as he spoke at least) was clearly induced by the promise of this benefit, and there was error to admit it.

In carefully looking through the record, we are satisfied the offence was not made out without the admission of these confessions. The prosecutor could not swear posi-

tively he had lost any meat; it was missing, as he thought, from the quantity in the tierce between the period when he left it on Saturday afternoon and when he returned on Monday morning but he also swore there was a considerable trade going on after he left the store, and he could not swear the clerk he had left in charge had not sold it in his absence. There is no *corpus delicti* proved except by the confessions admitted, and nothing besides to identify the meat lost to be the same as the meat recovered. We are to administer the law to the humblest, and accord them their full legal rights; and we are by no means inclined to relax the rule against a class when the confessions are made to an employer by one who is under his control and who naturally would rely with implicit faith on any inducement thus held out to him.

As to the charge of the court complained of in the fourth ground of the motion, there is no error; but as we cannot know what weight this inadmissible confession had upon the jury, and as we think the offence charged against the accused, was not (in the absence of this confession) satisfactorily proved, we feel it our duty to reverse the judgment and order a new trial.

Judgment reversed.