## CARTER *v.* THE STATE.

1. It is not essential that an indictment for arson,. charging the burning of an "outhouse," should allege whether or not the same was located in a city, town or village.

2. A freight-car body which has been detached from the wheels and placed upon permanent posts near a railway-track at a station, and to which a

platform has been attached, thus constituting a structure to be used as "a freight warehouse," and which is used for this purpose only, is a "house" within the meaning of section 136 of the Penal Code.

3. Such a house, located elsewhere than in a city, town or village, may be characterized as an "outhouse," though not appurtenant to any other building.

4. When the principle embraced in a request to charge is so fully covered by the general instructions given to the jury that they could not possibly be mistaken as to the true law of the point in question, refusing to give such a request is not cause for a new trial.

5. According to the rule laid down by this court in *Byrd* v. *State*, 68 *Ga.* 661, the acts and declarations of one accomplice, done and made during the pendency of a common purpose and effort to conceal a crime already perpetrated, are admissible against another accomplice.

6. A new trial will not be granted because of a refusal by the court to inquire whether or not any of the panel of jurors were disqualified by relationship, when it is not shown that in point of fact a juror thus disqualified was placed upon the panel.

7. The discretion of the trial judge in determining, upon conflicting evidence, whether or not a juror was impartial, will not, unless abused, be interfered with by this court.

Argued December 19, 1898. — Decided February 2, 1899.

Indictment for arson. Before Judge Sweat. Wayne superior court. October 15, 1898.

*Thomas E. Watson, Brantley & Bennet* and *E. D. Graham,* for plaintiff in error. *John W. Bennett, solicitor-general, Good-year & Kay* and *D. M. Clark,* contra.

LUMPKIN, P. J. Upon an indictment against H. B. Carter, D. H. Moody, F. Herrington, and Jim Moody, charging them with the crime of arson, Carter was separately tried and convicted. His bill of exceptions alleges error in overruling a demurrer to the indictment, and in refusing to sustain a motion for a new trial. We will undertake a brief discussion of the material questions thus presented.

1. The indictment charged the wilful and malicious burning of "a certain freight warehouse," the property of the Southern Railway Company, "the same being then and there an outhouse." The point made by the demurrer was that the indictment failed to allege whether or not the house alleged to have been burned was in a city, town or village. The decision of this court in *Smith* v. *State*, 64 *Ga.* 605, practically settles

this question.   It was there held that "whether the outhouse burnt be in a city, town or village, or not, does not affect the legal character of the offense.   It affects the punishment only." Accordingly, a ruling of the trial court refusing to exclude testimony on the ground that the indictment failed to allege that the outhouse was not in a city, town or village, was sustained.

2. The next question for determination is whether or not the structure burned was a "house" within the meaning of section 136 of the Penal Code, defining the offense of arson.   The evidence shows that the body of a freight-car had been taken off the wheels and placed near the railway-track at a station; that it was supported upon permanent posts, and that a platform, to be used in transferring freights to and from the car body, had been attached to the same.   It further appeared that the structure thus located was used as "a freight warehouse" by the railway company in precisely the same manner as if it had been an ordinary warehouse built for this identical purpose.   In view of these facts, we have no difficulty in holding that the structure in question was a "house," and accordingly, we approve the instruction to this effect given by the trial judge to the jury. That the structure with which we are now dealing was not in shape like an ordinary house, or that a portion of the same had been formerly used as a movable car, does not prevent it from being, within legal contemplation, a house.   It was certainly no longer a car; and, having all the elements of permanency, and being adapted to the uses for which a warehouse is suitable, we see no reason why it should not be treated as a structure coming within the protection of the statute above cited.   See, in this connection, *Williams* v. *State*, this term, 105 *Ga.*

3. As will have been observed, the indictment alleged that this structure was an "outhouse."   There was no evidence showing that the Southern Railway Company had or owned any other building at this station; and counsel for the accused thereupon insisted that the house in question could not, in legal contemplation, be an "outhouse," and accordingly, that there was a fatal variance between the allegations of the indictment and the proof.   It is true that the word "outhouse" primarily means a building adjacent to a dwelling-house and subservient

thereto, but distinct from the mansion itself. See 2 Bouv. Law Dic. 341; Black's Law Dic. 859; Anderson's Law Dic. 515. After careful consideration, however, we have reached the conclusion that the word "outhouse," as used in sections 136, 141 and 142 of our Penal Code, as applied to a structure not located within a city, town or village, is intended to embrace a house of any description which is not a dwelling-house. In *Watt* v. *State*, 61 *Ga.* 66, this court held that the wilful and malicious burning of a country church was indictable under section 4379 of the then existing code, which is the same as section 141 of the present Penal Code. The status of a railway warehouse, located elsewhere than in a city, town or village, can not be legally different from that of a country church similarly situated. That all houses other than dwelling-houses, thus located, were intended to be regarded as "outhouses," seems manifest from the provisions of section 142 of the Penal Code, which declares that "setting fire to an outhouse of another, as described in the preceding section, shall be punished," etc.; for unless this meaning be given to the word "outhouse" as used in section 142, we would have no penalty whatever for the offense of setting fire to a house of the kind described in the present indictment. The truth is, the prefix "out" was totally unnecessary in this connection, except for the exclusive purpose of distinguishing dwelling-houses from other houses; but the use thereof should not, we think, be given the effect of defeating the legislative will, which clearly was to include buildings other than those which would ordinarily be understood as falling within the class designated by the word "outhouse."

4. All of the persons named in the indictment were accused as principals. The court was requested to charge that if Carter, who was then on trial, was guilty either as an accessory before the fact or as an accessory after the fact, he could not lawfully be convicted under this indictment. The court refused to instruct the jury in the precise language of the requests presented, but did charge the jury repeatedly, distinctly and unequivocally, that the accused could not be convicted unless they were satisfied beyond a reasonable doubt that he was pres-

ent at the time the arson was committed and actually partici-
pated in its perpetration. A mind of even ordinary compre-
hension could not have failed to understand, from the plain
and explicit language used by the judge, that no verdict of
guilty could properly be returned against the accused unless
the evidence showed his guilt as a principal. The jury must
have known, from the instructions given them, that no matter
how intimate a connection with the crime Carter may have
had, either before or after its commission, he could not be law-
fully convicted of the charge brought against him unless he
was present and actually participated in the burning of the
house. This being so, and the evidence tending to show his
guilt as a principal being very strong, we do not feel constrained
to order a new trial because of the court's refusal to give the
requests above mentioned, although we do not hesitate to say it
would have been the better practice so to do.

5. The court admitted, over objection of the accused, evi-
dence of certain acts on the part of D. H. Moody and declara-
tions immediately accompanying the same, and also a letter
written by him to Herrington, all tending to show a guilty
connection on Moody's part with the crime charged in the in-
dictment, and also to some extent implicating Carter as a par-
ticipant therein. These acts were done and these declarations
were made some time after the arson had been committed, and
the letter was written at a still later period; but there was, in-
dependently of the conduct and sayings of Moody with which
we are now dealing, and of anything contained in his letter
to Herrington, much evidence tending to show there was a con-
spiracy to steal goods from the warehouse and burn the build-
ing, and also to establish the State's contention that Carter was
actively concerned, not only in the theft and arson, but also in
a common intent and purpose on the part of the conspirators
to effectuate a concealment of these crimes and shield each
other from detection and punishment. In other words, there
was, outside of the evidence objected to, proof authorizing the
conclusion that the alleged conspiracy embraced a "criminal
enterprise" the scope of which included larceny, arson, and con-
cealment. There was also some evidence warranting the in-

ference that this enterprise was still pending on the occasions to which 'the evidence complained of as illegal related. It seems, therefore, under the decision of this court in *Byrd* v. *State*, 68 *Ga.* 661, that this evidence was admissible against Carter. In that case it was distinctly ruled that the acts and conduct of one accomplice during the pendency of the wrongful act, not alone in its actual perpetration but also in its subsequent concealment, were admissible against another accomplice. This holding was doubtless based upon the idea that the criminal enterprise was still pending while the conspirators continued to be active in taking measures to prevent the discovery of the crime or the identity of those connected with its perpetration.

6. One ground of the motion for a new trial complains that the judge erred in refusing to inquire whether or not any of the panel of jurors put upon the accused were stockholders in the Southern Railway Company or were related to such stockholders. As it was not made to appear that any juror having such a disqualification was in fact upon the panel, this ground is obviously without merit.

7. The only remaining ground of the motion for a new trial which need be noticed is one alleging partiality on the part of a juror. This ground was supported by evidence going to show that prior to the trial the juror in question had used expressions indicating prejudice against the accused. By way of counter-showing, however, the juror made an affidavit positively denying the use of the language imputed to him, and was in this respect corroborated by other evidence. It therefore simply appears that, upon a conflict of testimony which would have warranted a finding either way, the judge held that the juror was not incompetent to try the accused, and certainly there was no abuse of discretion in so doing.

*Judgment affirmed. All the Justices concurring.*