(No. 13440.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE WEISMAN, Plaintiff in Error.

*Opinion filed October 23, 1920—Rehearing denied Feb. 14, 1921.*

1. CRIMINAL LAW—*when plaintiff in error is not in position to object to variance.* On review of a criminal case the plaintiff in error is not in a position to avail himself of any claim of a variance where no objection to the testimony on the ground of a variance was raised at any time during the trial.

2. SAME—*when variance as to names will be regarded as material.* A variance as to the names alleged in an indictment and proved by the evidence is not to be regarded as material unless it shall be made to appear to the court that the jury were misled by it or that some substantial injury was done to the accused thereby, such as that by reason thereof he was unable intelligently to make his defense or was exposed to the danger of a second trial on the same charge.

3. SAME—*to raise question of improper argument the record should show the argument was made and objected to.* To entitle a plaintiff in error to make complaint against improper argument the record should show that the argument was made and also that an objection was made.

4. SAME—*new trial will not be granted where new evidence is cumulative.* A new trial will not be granted for newly discovered evidence which is merely cumulative, especially where it is shown that due diligence was not used to obtain the witnesses or to have the trial continued to a time when they could be produced.

5. SAME—*new trial will not be granted merely upon affidavit of defendant.* A new trial will not be granted where only the affidavit of the defendant is to be relied upon to show what the new evidence will be and where there are no affidavits of the witnesses themselves by whom it is proposed to prove the facts relied upon.

6. SAME—*when instruction as to accessories before the fact is harmless.* Where the circumstances connected with the burglary of a bank are such that it may never be known whether the accused took part in the act as a principal or as an accessory but his guilt is presumed from discovery of the stolen articles in his possession, it is not harmful to give the jury an instruction in the language of the statute defining an accessory before the fact.

7. SAME—*possession of stolen articles raises a presumption of guilt of burglary.* Where it is an undisputed fact that a burglary was committed, the defendant's recent and unexplained possession

of the articles stolen at the time raises a presumption that he is guilty of the burglary as well as of the larceny.

8. SAME—*when the possession of stolen property is sufficient to authorize a conviction—instruction.* The recent and unexplained possession of stolen property is sufficient, of itself, to authorize a conviction of the possessor for the theft, unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence which create in the minds of the jury a reasonable doubt of such guilt; but an instruction that such possession constitutes a *prima facie* case of guilt is not strictly accurate.

9. SAME—*evidence to convict of burglary need not be confined to stolen articles found on defendant.* Where it is an undisputed fact that a bank was burglarized and property taken therefrom, it is proper on the trial of a defendant on whom some of the stolen property was found to prove the burglary completely in all its details as well as the larceny.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

THOMAS B. HARVEY, and F. J. TECKLENBURG, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, HUBERT E. SCHAUMLEFFEL, State's Attorney, C. W. MIDDLEKAUFF, and H. C. LINDAUER, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, George Weisman, sued out this writ of error to reverse the judgment of the circuit court of St. Clair county convicting him of burglary and larceny and sentencing him to an indefinite term in the Southern Illinois penitentiary. He was tried under an indictment charging him and George Davis with having burglarized the bank building of the First National Bank of Marissa, Illinois, a corporation, on September 4, 1919, and with having then and there stolen, taken and carried away $2000 of lawful money of the United States and divers United States bonds and war savings stamps, of the goods and chattels of said First National Bank of Marissa, Illinois, then and

there found in said bank building. The jury found both defendants guilty as charged in the indictment and found the ages of plaintiff in error and Davis, respectively, 21 and 28 years. The court sustained a motion on behalf of Davis and granted him a new trial but overruled a motion for new trial on behalf of plaintiff in error and sentenced him upon the verdict.

The undisputed facts are the following: About seven o'clock in the morning of September 4, 1919, William G. Quade, assistant cashier of the First National Bank of Marissa, was called to the bank. He found that the rear windows of the bank building had been broken during the night and the building entered. The lock on the vault door indicated that it had been knocked off or blown off with some explosive, and a number of vault boxes were taken out and robbed of their contents and papers were scattered in confusion over the floor. About $250 in money had been taken, and also a large number of Liberty bonds had been taken from the safety boxes belonging to lessees thereof. No one was seen near or around the building or in the city of Marissa upon whom suspicion rested. Plaintiff in error was employed as night clerk at the Alamic Hotel, at Fourteenth and Chestnut streets, St. Louis, Missouri, which was owned by his uncle, Joseph T. Weisman. On the evening of September 4, 1919, about seven o'clock, plaintiff in error took eight fifty-dollar Liberty bonds to the office of the Friedman Loan and Mercantile Company at 1500 Market street, St. Louis, and sold them and signed his name and address in the book kept by the company for that purpose. He told Harry Marx, an employee of the company, who purchased the bonds, that the bonds did not belong to him but belonged to a guest at the hotel by the name of Brown. These eight bonds were identified by the numbers as bonds that were stolen from the First National Bank of Marissa. There is no question of the identity of these bonds as a part of the bonds stolen from the First National Bank the

night before they were sold. About eight o'clock that same evening plaintiff in error went to another office of the Friedman Loan and Mercantile Company at 2001 Market street, St. Louis, and there offered to sell to Manuel Goodman, an employee of the company, eight other Liberty bonds, each of the denomination of $50. He told Goodman that these eight bonds belonged to his uncle, Joseph Weisman. Goodman tried to call Weisman over the telephone but failed to get him. He then asked the plaintiff in error if he had been to the office of the Friedman Company at 1500 Market street. Goodman gave as a reason for asking him this question that the office of the company at 1500 Market street was nearer to the Alamic Hotel, where he knew plaintiff in error was employed as night clerk. Plaintiff in error told him that he had not been to the other office of the company. Goodman called up the other office and learned that plaintiff in error had been there and so told him. Plaintiff in error then asked Goodman to give him back the bonds, and Goodman did so and plaintiff in error took them and left. On the 17th or 18th of September following, Mark A. Shipley, special claim agent for the Fidelity and Casualty Company of New York, and sergeant of detectives Kaiser of St. Louis, went together to the room of plaintiff in error about ten o'clock A. M. and after waking him asked him about selling the bonds. He denied to them that he had been to both offices of the Friedman Loan and Mercantile Company, and told them he had taken the eight bonds first above mentioned to the Friedman Company's office at 1500 Market street and sold them for a guest at the hotel, for which he said he was paid the sum of five dollars. He gave to them a very indefinite description of the guest who he claimed engaged him to sell the bonds but could not give them his name. The officers testified that he appeared excited when he was being questioned by them.

Plaintiff in error took the witness stand in his own defense and testified that he was never in Marissa and denied

any connection with the burglary and larceny, and testified that at the time he sold the bonds in question he did not know that the bank had been burglarized. He admitted that he had taken the other eight bonds to the Friedman Loan and Mercantile Company at 2001 Market street and there offered them for sale, and that he took them away with him when the clerk there seemed to be suspicious of them. He also testified that he was paid $10 for selling the first eight bonds, and that a guest at the hotel by the name of Erlick, who was registered as being from East St. Louis under the date of September 3, 1919, had employed him to sell these bonds. He further testified that when he returned with the other eight bonds he gave them to Erlick, and that Erlick left the hotel and had never been seen by him since. He described Erlick as a dark-complected man, weighing about 180 pounds, stout and smooth shaven. He denied telling the officers that he had been paid $5 for selling the bonds and testified that he told them he had been paid $10 therefor. He did not deny in his testimony that he told Goodman that the latter eight bonds belonged to his uncle, Joseph Weisman, and did not deny in his testimony that he told Marx, at 1500 Market street, St. Louis, that the first eight bonds belonged to a guest at the hotel by the name of Brown.

After consideration of the foregoing evidence our conclusion is that the jury were fully warranted in finding the plaintiff in error guilty and that we would not be justified in reversing this judgment upon the ground that his guilt is not established beyond a reasonable doubt, as contended by him. The jury and the court had the advantage of hearing and seeing the witnesses as they appeared and testified upon the witness stand, and there is no reasonable theory appearing in the record why this court should substitute its judgment for that of the jury and of the court, and we are not disposed to do so. The possession of a part of the stolen bonds so recently after the burglary made a *prima facie* case of guilt against plaintiff in error, the possession

of the bonds not being explained by any evidence in the record in a manner sufficient to raise a reasonable doubt of his guilt. The attempted explanation of his possession of the stolen bonds is very unsatisfactory. His statements were very conflicting and his conduct while trying to sell the bonds was of a very suspicious character. The case was really stronger for the State after his testimony than before. A *prima facie* case having been made by the State in the first instance, the only logical verdict for the jury was one of guilty.

It is also insisted that the judgment should be reversed because of a variance between the name of the bank alleged in the indictment and that proved by the evidence. The name of the bank as alleged in the indictment is First National Bank of Marissa, Illinois. Counsel for plaintiff in error insist that the proof shows that the theft and burglary were committed against the First National Bank of Marissa. Some of the witnesses in their testimony did refer to the bank as the First National Bank of Marissa, while others referred to it in their testimony as the First National Bank of Marissa, Illinois. There was no positive testimony in the record by anyone that the correct and charter name of the bank is First National Bank of Marissa. It is also true that no witness testified that the charter name is First National Bank of Marissa, Illinois. The only ground upon which plaintiff in error bases his claim that there was a variance is a telegram of the United States comptroller of currency, filed with the motion for a new trial, that the charter name of the bank is First National Bank of Marissa. There was no objection raised at any time during the trial to the testimony on the ground of a variance. The only objection made to the evidence was that oral evidence was not the proper character of evidence by which to prove the name of the corporation. Plaintiff in error therefore is not in a position to avail himself of any claim of a variance. Even if the claim of a variance had been

made, it was not of such a character as would be fatal to the verdict in this case. The modern rule is that a variance as to names alleged in an indictment and proved by the evidence is not to be regarded as material unless it shall be made to appear to the court that the jury were misled by it or that some substantial injury was done to the accused thereby, such as that by reason thereof he was unable to intelligently make his defense or was exposed to the danger of a second trial on the same charge. (1 Wharton on Crim. Evidence, 288; *State* v. *Long,* (Mo.) 213 S. W. 436.) There is no possible theory upon which it can be said that plaintiff in error has been materially injured upon the trial by reason of the alleged variance or that he will be prejudiced hereafter by the danger of having again to answer this charge.

The claim that plaintiff in error was prejudiced by the improper conduct of the State's attorney in the examination of the witnesses is not sustained by the record. It was improper for the State's attorney to inquire of one of the witnesses, as he did, as to the character of people that staid at the Alamic Hotel, and then, when the witness replied that they were theatrical people that stopped there, to further ask the witness, in substance, if the hotel was not a regular assignation house. The court sustained objections to this evidence and the witness did not answer further than as above disclosed. It was improper for the State's attorney to make such inquiry of the witness, yet plaintiff in error's objection to it was sustained by the court and that was the end of it.

It is further charged by plaintiff in error that the State's attorney improperly argued to the jury that the hotel was an assignation house. The record does not so show. In order to be entitled to make complaint against such argument, if it did occur, the record should show that it was made and also that objection was made to it. We must accept the record as our complete guide upon this question,

and the record discloses that there is no such question for us to pass upon.

The court properly refused to grant a new trial on the ground of newly discovered evidence which was merely cumulative. On the trial plaintiff in error testified himself and offered proof by another witness to the effect that he was at the Alamic Hotel at St. Louis, Missouri, all of the evening and night on which the burglary of the bank was proved to have occurred. The newly discovered evidence upon which he based his ground for a new trial purported to be to the same effect that he was at the hotel during all the night of the burglary, and that this testimony would be given on another trial by two other witnesses who staid at that hotel on the night of the burglary. No diligence was shown by plaintiff in error as to one of these witnesses,—*i. e.,* no reason appears why he could not have had her at the trial if he had made the attempt to do so. Besides, it is a well settled rule of this court that a new trial will not be granted for newly discovered evidence which is merely cumulative, and particularly where it is shown that no due diligence was used to have the witnesses there or to have the trial continued to a time when they could be had. There is no affidavit in this case by the other witness but simply an affidavit by plaintiff in error as to what he expects to prove by him. A new trial will not be granted upon a showing of merely cumulative evidence, nor upon the affidavits of others than the witnesses by whom it is proposed to prove the facts relied upon. *Emory* v. *Addis,* 71 Ill. 273; *Janeway* v. *Burton,* 201 id. 78.

Complaint is made of the fourth instruction given on behalf of the People, which defined an accessory before the fact in the language of the statute. It is conceded that the instruction correctly stated the law, but it is argued that it was erroneous because not based on any facts in the record. We cannot see that plaintiff in error was prejudiced by the giving of said instruction. The plaintiff in error, from the

proof in this record, is presumed to have been guilty of this burglary as already stated, but whether his guilt was that of a principal who actually engaged in the act or simply as an accessory may never be known.

Instruction No. 6 given for the People and complained of by plaintiff in error is the same instruction and in the same language that has been repeatedly sustained by this court, it being an instruction relative to the tests to be applied to the credibility of the accused if he takes the witness stand. It was approved by this court in *Hirschman* v. *People,* 101 Ill. 568, *Rider* v. *People,* 110 id. 11, and *Williams* v. *People,* 196 id. 173.

Instructions Nos. 2 and 3 given for the People read as follows:

2. "The court instructs you that the possession of stolen property soon after the theft was committed is *prima facie* evidence that the property was stolen by the person in whose possession it was found. That fact, of itself, if you believe from the evidence, beyond a reasonable doubt, it is a fact, will authorize a conviction unless the evidence in the case or the surrounding circumstances are such as to raise a reasonable doubt of such guilt."

3. "The court instructs you that where a larceny of goods and chattels is committed at the time and place a burglary was committed, the possession by any person of such stolen goods and chattels shortly after the crime was committed is *prima facie* evidence that the property was stolen by the person in whose possession it was found, and also *prima facie* evidence of a participation in the burglary as well as in the larceny. Those facts themselves, if you believe from the evidence, beyond a reasonable doubt, they are the facts, will authorize a verdict of guilty of burglary, unless the evidence in the case or the surrounding circumstances are such as to raise a reasonable doubt of such guilt."

The foregoing instructions state the law substantially although they are somewhat faulty in their wording. An

instruction in substantially the same language as the above instruction No. 2 was approved by this court in *Smith* v. *People*, 103 Ill. 82, after a thorough consideration by the court. If No. 2 correctly states the law in substance No. 3 likewise correctly states the law, because if a burglary is committed at the same time and by the same act that the larceny is committed the same presumption obtains that the defendant is guilty of the burglary as well as of the larceny. (*Williams* v. *People, supra; People* v. *Everett,* 242 Ill. 628; *Flanagan* v. *People,* 214 id. 170.) We think that the more correct rule concerning the recent possession of stolen property is that the recent and unexplained possession thereof tends to establish the guilt of the person in whose possession the same is found, and is sufficient, of itself, to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence which create in the minds of the jury a reasonable doubt of such guilt. (*State* v. *Brady,* 12 L. R. A. (N. S.) 199, and annotations thereto.) It is in this same sense that the term *"prima facie* evidence" is to be understood in the above instruction. The use of the words *"prima facie"* in such an instruction is not strictly accurate and correct, but we do not believe that the jury would understand the court to be telling them by the use of such words that the presumption was one of law and not of fact. We feel satisfied that plaintiff in error in this case was not prejudiced by the giving of either of the above instructions. This court has so frequently approved instructions in substantially the same language that we would not feel warranted in reversing a judgment because instructions so worded were given unless there is some showing in the record, other than the mere giving of instructions in the above form, that the defendant was prejudiced thereby. There is no such showing in this record.

The court did not err in permitting testimony as to all the bonds and money lost and stolen in the burglary in

·question. It is proper to prove all the facts surrounding a burglary and the complete burglary and larceny, and no court could properly be required to confine the evidence as to larceny to the articles actually found in the possession of one of the persons charged with the crime. In all larcenies and burglaries committed by two or more persons there is generally a division among the burglars of the property stolen, and it is proper on the trial of any one or all of them to prove the burglary completely in all its details and the complete larceny as well. Each party participating in the burglary and larceny is guilty of the entire crime, and the enormity of the offense is measured by the enormity of the complete crime and the punishment is to be fixed accordingly.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*