GELOSI, Plaintiff in error, vs. THE STATE, Defendant in error.

*June 5—June 26, 1934.*

650

The cause was submitted for the plaintiff in error on the brief of *Thomas F. Rogers* of Elmira, New York, attorney, and *Hill, Beckwith & Harrington* of Madison of counsel, and for the defendant in error on that of the *Attorney General, Fred Risser,* district attorney of Dane county, and *Carl Christianson,* assistant district attorney.

FOWLER, J. Upon the evidence above stated the jury were clearly justified in finding that a murder was com-

mitted, and that Gelosi was guilty of being accessory after the fact thereto. Defendant's counsel concede this but assign as error under the charge of being accessory before the fact, (1) that their motion to dismiss made at the close of the state's case should have been granted for want of evidence connecting Gelosi with the murder; (2) the admission in evidence of acts and declarations of Delmonti and Ross as coconspirators with Gelosi; and (3) instructions to the jury "concerning the relevancy of events following the killing of Presti."

(1) The acts of Gelosi in connection with the disposition of Presti's body contained in the statement of facts preceding the opinion tend to show that he had foreknowledge of the murder, and to connect him therewith as accessory prior to its commission. Other evidence was received on behalf of the state, which taken together, is of like tendency. From this other evidence it is without dispute or might properly be inferred by the jury as follows:

Gelosi had formerly lived in Madison, and while living there had been a bootlegger. He had been wounded and his small child killed by gunshots fired by some unidentified person while he was perambulating the child. Because of this he removed in 1929 to Elmira, New York, and there went by the name of Joseph Aras and was maintaining a residence there with his family at the time of the murder. Ten days prior to the murder he and two men came in an automobile to the residence of Mrs. Snashall in Janesville. Gelosi and one of the men came into the house and the other man remained in the car. Gelosi said he was looking for work and engaged a room. He said the man in the car worked in Madison. Later the man in the car came onto the porch of the house, and Mrs. Snashall heard Gelosi say to him that he (Gelosi) had told her that he (the man on the porch) worked in Madison. The man who came in the house with Gelosi inquired of Mrs. Snashall if she would call

Gelosi to the telephone if a message came to him in the night. This she declined to do. He then asked if she would report telephone messages if they came for Gelosi in his absence, and she promised to do this. She received two messages for him within the next few days, and in one a voice she recognized as that of the man who was with Gelosi when he engaged his room gave her a telephone number which Gelosi noted and took with him. On July 3d, Delmonti and Ross drove from Madison to Janesville, met Gelosi there, and the three conversed together in a foreign language which Sandria Livingston, who was with them, did not understand. On July 4th, Mrs. Snashall received a telephone message from Madison, in the voice of the man who came into her house with Gelosi when he engaged his room. The man identified himself as having been to her house the day before. The message was to the effect that the man talking had been to "that place the day before to see that man about a job but the man had moved and he would see him later." Presti had moved a short time before. Gelosi inquired for a telephone message several times on July 4th before this message was received and appeared anxious to receive one. On the evening of July 4th, Delmonti and Ross went to Presti's residence but he was away. On the night of July 5th, according to Mrs. Snashall, an automobile came up to her residence and the horn was sounded. The car looked like the one in which Gelosi and the two men came when Gelosi engaged his room, and the voice of a man in the car sounded like the voice of the man who came into the house with Gelosi at that time. On the sounding of the horn Gelosi went immediately out to the car, quickly returned to the house, took his grip, and hurriedly left without any explanation of his departure, or saying anything to Mrs. Snashall. Gelosi had kept his grip packed all the time he was at Mrs. Snashall's, and had spent his time when away from his room mostly in the parks of the city.

Conspiracy to commit crime may be proved by circumstantial evidence. None of the circumstances above stated standing alone is of great weight, but altogether, in connection with the testimony of Sandria Livingston, as detailed in the statement of facts preceding the opinion relating to the acts and statements of Gelosi after the murder was committed and the declarations of Delmonti and Ross stated in (2) below, make a case for the jury in our opinion. The motion to dismiss was therefore properly denied and the jury's verdict must be sustained unless the contentions made under (2) or (3) compel reversal. In view of all the circumstances stated, Gelosi's conduct upon and after viewing Presti's body, can hardly be explained except upon the hypothesis that, in the language of the information, he "procured, advised, and [or] counseled" the murder.

(2) Sandria Livingston testified that immediately after Presti was killed Delmonti suggested that they take the body on; that Ross responded to the effect that they should not be foolish; and that Delmonti then said: "The *boss* said he hated him so bad he could eat him. If he is man enough to eat him, I am man enough to take him where he can eat him." She also testified that immediately after the shooting she said: "What's the big idea?" That Delmonti replied: "The man is a pig and a killer. He killed a woman and a baby. He deserved to die." She then told Delmonti not to make any excuses and he replied: "Well, he killed my brother fourteen years ago *too* in a gun fight."

It is the admission of the above statements that defendant's counsel assign as error. They claim the evidence was inadmissible on the grounds that, (a) it was received before the evidence showed a conspiracy between the defendant and the killers, and (b) because the statements were made after the murder was committed.

(a) Statements of one coconspirator against another are not receivable until a *prima facie* case of conspiracy is made.

*Schultz v. State,* 133 Wis. 215, 225, 113 N. W. 428. The court was careful to abide by this rule. It definitely ruled that a *prima facie* case of conspiracy was made before the statements were received. All the evidence above detailed except the statements themselves had been received. We are of opinion that ground (a) is not well taken.

(b) Defendant's counsel concede that declarations of co-conspirators in a crime made during the continuance of the conspiracy to commit it, are receivable in evidence against another coconspirator charged as an accessory before the fact to that crime. But they contend that the conspiracy ends with the commission of the crime, and that statements made after its commission are mere hearsay and inadmissible. Counsel for the state concede that such statements made after the conspiracy has ended are not admissible, but contend that the conspiracy to murder in the instant case continued until the disposition of the body was completed.

We are of opinion that the state's contention should be sustained. It is said in the opinion of this court in *Baker v. State,* 80 Wis. 416, 422, 50 N. W. 518, that

. . . "although the general rule is that a conspiracy is at an end when the contemplated crime has been committed, there may unquestionably be circumstances which show that the conspiracy is not then terminated, because all of the objects of the conspiracy are not then fully accomplished."

In case of robbery by coconspirators the offense is committed when the property is taken from the person; in larceny it is committed when the property is stolen. But the conspiracy continues until the booty is divided and the statements of any conspirator made before the division is completed are admissible against the others. *Baker v. State, supra; O'Brien v. State,* 69 Neb. 691, 96 N. W. 649; *Miller v. State,* 88 Tex. Cr. Rep. 157, 225 S. W. 262. The same is true of obtaining money by false pretenses and extortion. *State v. Labuwi,* 172 Wis. 204, 178 N. W. 479; *People v.*

*Hall,* 51 App. Div. (N. Y.) 57, 64 N. Y. Supp. 433. And in case of murder, when the object is the procuring of the victim's property by will, the conspiracy continues until the probate of the deceased's estate is concluded. *Sapp v. State,* 87 Tex. Cr. Rep. 606, 223 S. W. 459. These cases bear only indirectly upon the precise point here involved, but where murder is committed under circumstances such that the body must be disposed of to avoid detection, the conspiracy by analogy persists until disposition is accomplished. Closer to the precise point are the cases of *Byrd v. State,* 68 Ga. 661, and *Carter v. State,* 106 Ga. 372, 32 S. E. 345, 347, wherein it is held that in cases of coconspirators the acts and conduct of each made during efforts of concealment of the crime are admissible against the other. The conspiracy continues "while the conspirators continue to be active in taking measures to prevent the discovery of the crime or the identity of those connected with its perpetration." It was recently stated by this court in *Pollack v. State, ante,* p. 200, 253 N. W. 560, 254 N. W. 471, wherein a conspiracy was entered into to commit robbery, and a murder was committed by one of the conspirators during an attempt to commit the crime, and wherein it was contended that two of the conspirators abandoned the conspiracy before the murder was committed, that the conspiracy continued during the escape of the conspirators after the murder. For like reason the conspiracy here involved continued until the body was removed from the car.

It is stated in *Baker v. State, supra,* p. 422: . . . "a conspiracy to commit an assault or a murder would, of course, be ended when the assault or murder was committed."

But this was said by way of illustration only. Assault or murder was not involved in the case and the statement is *obiter.* The statement is true enough, doubtless, when applied to a murder committed openly, where no acts of escape or concealment or disposition of the body are involved. The

statement must be construed as referring to a murder committed in the absence of such circumstances, as such circumstances were doubtless not in mind when it was made.

(3) The court instructed, in effect, that if the conspiracy had been proved by other evidence, to the satisfaction of the jury beyond reasonable doubt, the jury might then, but not otherwise, consider the statements and acts of Delmonti and Ross from the time they entered the conspiracy until the death of Presti. Fault is found with this in that the court did not limit the evidence to statements and acts of the murderers to events "prior to and at the time of the killing." Further criticism is made because the use of the words "until the death of Presti" was "confusing." The instruction would seem to be according to the contentions of defendant's counsel here made, and we are unable to perceive any prejudice to the defendant in the giving of it. The effect of the instruction would seem to be to take from consideration of the jury all acts and statements of the murderers subsequent to the moment of killing. Despite this the jury convicted the defendant, and we are of opinion that without the evidence of the statements made by the murderers from the time of the killing to the time Gelosi joined them the verdict of the jury would be sufficiently supported. If these statements were not properly receivable, it might with reason be claimed that their receipt was prejudicial because the jury may have considered them in disregard of the instruction. But, as we have above indicated, they were properly for the consideration of the jury. The verdict is therefore good, although the jury through "confusion" did consider them.

*By the Court.*—The judgment of the circuit court is affirmed.