People of the State of Illinois, Defendant in Error, v. Frank E. Konkowski and Stephen Idzikowski, Plaintiffs in Error.

Gen. No. 41,335.

Opinion filed February 26, 1941.

GRENVILLE BEARDSLEY, of Chicago, for plaintiffs in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER,

MELVIN S. REMBE, THOMAS G. BUGAN and WILLIAM B. CRAWFORD, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This action is in this court upon the defendants' filing of a petition for writ of error in a criminal action wherein the defendants and each of them were found guilty by a jury of a conspiracy to cheat and defraud as charged in the indictment which is in part as follows: "Grand jurors further present that Frank E. Konkowski and Stephen Idzikowski, on September 14, 1938, in Cook County, Illinois, unlawfully, fraudulently and deceitfully conspired and agreed together with each other and with divers other persons whose names are unknown, with the fraudulent and malicious intent unlawfully, wrongfully and wickedly to cheat and defraud one Edward Rozek of $600.00 of the value of $600.00, the property of Edward Rozek, contrary to law."

The cause was tried before a jury and the court, and upon the conclusion of the hearing and after the jury had been instructed by the court, the jury returned verdicts in which the defendant, Frank Konkowski, was found guilty of conspiracy in manner and form as charged in the indictment, and his punishment was fixed at imprisonment in the penitentiary for 1 to 5 years and a fine of $1,500. As to the other defendant, the jury found Stephen Idzikowski guilty of conspiracy in manner and form as charged in the indictment, and his punishment was fixed at imprisonment in the penitentiary for 1 to 5 years. Defendants moved for a new trial and upon a hearing, after a continuance, the court entered judgments on the verdicts.

From the briefs filed in the instant case no point is raised upon the technical sufficiency of the indictment, but it is urged that it conclusively appears from the evidence that the $600 in question was obtained more

than 18 months prior to the return of the indictment, that thereby the sole object of the conspiracy charged was completely effected and consummated, and hence that the prosecution was barred by the statute of limitations.

It appears from the evidence that Edward Rozek, in 1936, lived with his father, Paul, and mother, Josephine, and brothers Charles and Paul, Jr., a half block from defendant Idzikowski, who was a precinct captain in the organization headed by defendant, Frank Konkowski, as ward committeeman. Konkowski was at that time alderman of the city of Chicago, as well as a ward committeeman. Defendant Idzikowski had been a friend of the Rozek family for more than 10 years. On February 26, 1936, Charles Rozek made application to take the civil service examination to be conducted by the city of Chicago, to fill vacancies in the position of patrolman, commonly called policeman, and on March 10, 1936, Edward Rozek made a similar application. In April, 1936, Charles Rozek went to Idzikowski's home and told him that if he didn't pay money he had no chance to pass the examination, that Idzikowski was precinct captain and asked him what could be done. Idzikowski said he would see what he could do. Subsequently on May 7, 1936, Idzikowski took Charles Rozek to Konkowski's office, and the next day came to the Rozek home and in the presence of Mrs. Josephine Rozek, Charles Rozek handed a wallet containing $600 to Idzikowski, who counted the money. Idzikowski then took Charles Rozek to Konkowski's office. Idzikowski entered Konkowski's private office and in a few minutes came out with Konkowski and introduced him to Charles, and Konkowski told him that he would be a policeman.

Several months later, in August, 1936, Charles and Edward Rozek, had a conversation with their parents in relation to Edward's application, after which Edward Rozek went to Idzikowski and told him his folks

would like ''the money put up for my brother to be a policeman changed over to my name, because I was more interested in it than he was.'' After Edward got his first notice he went with Idzikowski to Konkowski's office, where Idzikowski introduced him to the alderman and said, ''This is the young fellow I want to get on the police force.'' Konkowski told him to report to him when he got notices for the examination. In August, 1937, Edward Rozek went to Konkowski's office and told him he had his notice for written examination, and Konkowski told him he had nothing to worry about, to just fill up the paper and he would take care of the rest.

A list of the successful candidates of the civil service examination in question was posted on September 14, 1938. Charles Rozek passed, and Edward Rozek failed.

The testimony of the parents substantially agrees with that of the two sons, Charles and Edward Rozek. Testimony was offered in respect of the efforts of the Rozek family to obtain the return of the $600, paid on May 8, 1936, and a visit to the Rozek home on April 16, 1939, of Charles Weidebusch, who brought $400 after a conversation with Idzikowski, and his arrest there. When the money was paid back to Rozek, an officer of the law was present and seized the parties to the transaction. There is also in evidence the testimony as well as the documentary evidence offered on behalf of the State relating to the efforts to be appointed policemen in the same examination of Henry Lorenz, who paid $600 on May 28, 1936, John Miller, who paid $500 on, March 10, 1936, Louis J. Salaka, who paid $500 in April, 1936, Samuel Zacconi, who paid $500 on January 7, 1937, George Johnson, who paid $600 on November 4, 1937, and Frank Kita, who paid $500 on August 24, 1936; the manner in which the money was raised on behalf of each applicant, the failure of each to pass the examination when the result was announced on September 14, 1938, and

it appears that efforts were made thereafter on behalf of each of these applicants, in part successfully, to obtain return of the money by them paid.

It appears from the evidence of Idzikowski on cross-examination with respect to giving money to Weidebusch, that he was sending the money to pay certain bills and when pressed admitted that he had taken the numbers of all the money and that he did not take a receipt from Weidebusch for the money. Weidebusch testified that this money was the money that he was returning to the Rozeks at the request of Idzikowski. There is testimony that Idzikowski and Konkowski discussed this question of returning money and Idzikowski said to Konkowski, "how about the money for those other applicants."

The defendants argue that the conspiracy in question was not a conspiracy to obtain money by false pretenses but that it was a conspiracy directed against the public generally to corruptly influence the Civil Service Commission to certify them to positions whether they passed the required examinations or not. The People, by their representative, reply to this contention by saying that there may have been a conspiracy to corrupt the Civil Service Commission but that there is no direct evidence thereof in the record, and that there is no statement on the part of Konkowski or Idzikowski that they were going to corrupt the Civil Service Commission. They told the complaining witness that they could put him on the police force and it is clear that this was intended to mean they could put him on whether he passed the examination or not. When asked for the proof of their ability to do this they said, "We will have this done and you will see it when the lists of the successful policemen are posted. You will be among the successful policemen." Defendants say that other applicants offered money and asked that it be used in their behalf. The People point out that this is not a correct statement,

referring to the testimony of other applicants contended to have paid money received by Konkowski, and contend that the evidence shows that these witnesses did not offer money to defendants and ask them to use it in their behalf, but that either one or the other of the defendants insisted that if the applicants wanted to get on the police force they would have to pay money, and that money was paid.

The State points out, in reply to defendants contention of fatal variance, that the defendants made no motion at the close of plaintiff's case to take the case from the jury, nor did they raise any question as to the variance between the allegation and the proof. Nor did they move to take the case from the jury at the conclusion of the whole case, nor raise any question of variance. It was only after they had taken their chance of being found not guilty and the jury had found them guilty that they thought of raising any question of limitations. It is elementary that a question of variance must be raised at the trial. *People v. Weisman*, 296 Ill. 156. The State then concludes its argument upon this point that the question does not arise where the charge is a conspiracy to cheat and defraud a particular individual and the proof shows that this particular individual was cheated and defrauded. The fact that a number of other persons were so cheated and defrauded was shown by the State, not to prove a conspiracy against a class of individuals but to show guilty intent on the part of the defendants, that this was not a case where some mistake had been made but that defendants were generally taking money with the promise of putting men on the police force regardless of whether they passed an examination or not—when in truth and in fact they were not doing any such thing and could not do it.

The defendants urge that the statute of limitations in a conspiracy case is 18 months (Ill. Rev. Stat. 1939, ch. 38 sec. 631 [Jones Ill. Stats. Ann. 37.606]), and that

when 18 months had elapsed from the obtaining of the money, the prosecution was barred by the statute of limitations, and maintain that the prosecution was clearly barred when the indictment was returned on May 19, 1939, 3 years after the money was obtained. The People's theory is that the conversations which took place with the defendants after September 14, 1938, in relation to the return of the money paid, were overt acts in furtherance of the conspiracy, but defendant's urge that such a theory is based upon a fundamental misapprehension. Defendants do admit, however, that a conspiracy is an agreement to effect an unlawful object, that each overt act in furtherance of the unlawful common object is a novation or renewal of the unlawful agreement, and that the statute of limitations begins to run from the date of the last overt act to effect the unlawful object, and contend further that here there could be no overt act to effect an unlawful object which had already been effected, urging that a conversation in relation to paying back money to one already defrauded, or restitution of a portion of the money of which the victim had been defrauded, has no reasonable or logical tendency to obtain the money of the victim, whose money had already been obtained years before. We will have to consider this question from the authorities as to whether the later rule is binding upon this court. There is no controversy as to the repayment and time of repayment of the money and the receipt thereof. The State contends that it was as much a part of the conspiracy and of the agreement that Rozek's name should be on the list when posted as was the paying over of the money, and that the fact of defendants paying back the money shows this to be true. In the instant case it is urged that the fraud was not complete but was a continuing one until the lists were posted.

In the criminal conspiracy case of *Smith v. State,* 47 Ga. App. 797, 171 S. E. 578, where the court of

appeals of Georgia, discussing the question of when a conspiracy ends, after stating that on the expiration of a conspiracy any admissions by one of the conspirators can be used only against him, said; ". . . but it is also true that proof that a crime has been committed does not necessarily prove the end of the conspiracy so as to render acts and declarations of coconspirators, for the conspiracy may be kept open for various purposes; as is said in 1 Corpus Juris, 661; 'While the commission of the crime to which a conspiracy relates will in many cases mark the accomplishment of its object and its consequent termination so as to exclude evidence of subsequent acts or declarations of one conspirator against another, this is not necessarily true. But the conspiracy may continue for various purposes, as, for instance, the securing of the proceeds of the crime . . . the division of such proceeds, the concealment of the crime, effecting an escape, the concealment of evidence tending to incriminate the conspirators, procuring witnesses to leave the State, bribing witnesses, influencing witnesses with respect to their testimony, the fabrication of evidence tending to exculpate the conspirators, the fabrication of a defense, or in any way avoiding prosecution or punishment; and where this is the case the acts and declarations of one conspirator are admissible against the others where made while the conspiracy continued, although after the actual commission of the crime.' In *Byrd v. State,* 68 Ga. 661, it was ruled that the acts and conduct of one conspirator during the pendency of the wrongful act, not alone in its actual perpetration but also in its subsequent concealment were admissible against another conspirator."

As we have already stated, if there was a variance, it was not raised at the trial, and this brings us to the second argument of defendants that the testimony tends to prove a conspiracy on the part of witnesses on behalf of the People to corruptly influence the Civil

Service Commission, and that if the proof did show a conspiracy to obtain money by false pretenses, the proof shows that such conspiracy was directed against the public generally and not against any particular individual. The proof, however, does not sustain this theory of the defendants.

The concealment of the crime until the posting of the lists and the payment of the money subsequently brings the case well within the rule as we pointed to when we called attention to the Georgia case (*Smith v. State,* 47 Ga. App. 797, 171 S. E. 578) in which 16 C. J. 661, is cited.

It appears from the record in the instant case that the defendant Konkowski tried to conceal the fact of taking the money and tried to have two witnesses, Zacconi and Salaka, change their testimony and keep them from testifying at the trial. He told Louis Salaka that they couldn't do anything to him, and that he could change his story so it wouldn't look so bad for him (Konkowski) and also to say that the money was not given directly to Konkowski. Konkowski also asked Zacconi if they would change their stories and they said they would. Zacconi was there with Salaka and they agreed on a story that they were supposed to have paid this money outside the office to some person other than Konkowski, a stranger. Konkowski told them that he thought he had a good chance beating the case if they would do this for him and he would give them a position and pay them the balance of the money and that they wouldn't get in any trouble if they would change their story. Our Supreme Court in passing upon evidence of this character in the case of *People v. Fox,* 269 Ill. 300, said:

" . . . The object of the introduction of this evidence was to show guilty knowledge on the part of plaintiff in error of the crime with which he was charged. Evidence that the accused has attempted to procure false evidence or to destroy evidence against

himself is always admissible for the purpose of showing consciousness of guilt, and so attempts by persons other than the accused to bribe or to suppress testimony are admissible if the accused had knowledge of or was in any way connected with such attempts; and where the facts are shown, it is for the jury to determine, under all the facts and circumstances proven, whether or not the accused had knowledge of or was connected with the crime with which he is charged. 'It has been held that a false theory of defense is some evidence of guilt. . . . The court may therefore charge that the false theory of defense indicating a consciousness of guilt may justify the jury in convicting the prisoner.' (Underhill on Crim. Evidence, —2d ed.— sec. 121.) We think the evidence offered for the purpose of showing guilty knowledge was properly admitted, but the evidence as to plaintiff in error's 'kiting' notes, and similar matters wholly disconnected from this case, should have been excluded.'' From the circumstances as they appear in this record, the efforts of defendant Konkowski, endeavoring to have the witnesses change their testimony, is for the jury to pass upon and determine whether or not defendants had guilty knowledge of or were connected with the crime, and we believe that for that purpose this evidence was properly admitted by the court.

It is contended by these defendants that the authorities of Cook county chose to regard as unconstitutional the act requiring women to be called as jurors, and that defendants challenged the array and that the challenge having been denied that error was committed. It does not appear from the record that the authorities of Cook county chose to regard the statute as unconstitutional. It appears that the defendant Konkowski made the challenge through his attorney. The proper way to challenge the array is for the challenger to support his challenge by affidavits or proof of the illegality of the panel. The question was dis-

cussed in a late case, *People v. Stamey,* 306 Ill. App. 477, where the following language was used:

"In the case of *People v. Hotchkiss,* 347 Ill. 217, 179 N. E. 524, it was urged that the overruling of defendant's challenge to the array of the petit jury panel and denial of motion for new trial was reversible error. There, the challenge to the array was signed by defendant's attorney but was not sworn to nor supported by accompanying affidavits, nor was any evidence offered in its support. This failure to support the challenge either by evidence or by affidavits was a fatal omission and justified the trial court in overruling the challenge. *People v. Stevens,* 335 Ill. 415, 167 N. E. 49; *Earll v. People,* 73 Ill. 329; *Borrelli v. People, supra.* Where a challenge to the array of jurors is made, the challenger must support his challenge by affidavits or proof of the illegality of the panel. *People v. Stevens, supra; Borrelli v. People, supra.*" From the record as it appears here, the failure of the defendant to sustain his motion by proper evidence was a fatal omission and more particularly that the motion was made by his attorney, when the challenge should have been sworn to by the defendant. The trial court was fully justified in denying the challenge to the array of jurors. It is to be noted, however, that the amendment to the juror law making women electors eligible for jury service was held constitutional by the Illinois Supreme Court in *People v. Traeger,* 372 Ill. 11.

It is next contended by the defendants that the court erred in refusing to lock up the jury while the case was on trial, because of the fact that there was considerable publicity in the newspapers in respect to a former trial growing out of transactions similar to the one in the instant case. Nothing appears in the record as to when this trial took place, and no articles of any kind are set forth in the petition, which consists of generalities. The trial court said that in his

humble opinion the case was like any other case and that both sides were responsible for giving out statements and discussing prejudices and therefore he would overrule the motion to lock up the jury. So far as we have been able to find, the jury was not in a position to learn of articles or matter which was prejudicial. Defendants rely upon the case of *People v. Schneider,* 362 Ill. 478, which might appear to overrule all cases on the subject that except in capital cases it is within the discretion of the trial court to either lock up the jury or let it go with proper admonitions as to any talk to outsiders. The People point to that same opinion, contending that upon a careful examination of this case it shows that it does not change the rule as above stated and as laid down in the case of *Sutton v. People,* 145 Ill. 279, and adhered to in *People v. Stowers,* 254 Ill. 588; *People v. Foster,* 288 Ill. 371; *People v. Robinson,* 299 Ill. 617, 624; *People v. Casino,* 295 Ill. 204. As appears from an examination of the *Schneider* case *(supra),* it does not overrule the former opinions of the Supreme Court. There is nothing that would indicate that the jurors were prejudiced by anything they read or heard in respect to defendant's actions. We believe under the circumstances that the court did not err in denying the motion of the defendants to lock up the jury.

It is contended by defendants that the evidence does not show beyond a reasonable doubt that the defendants were guilty. The evidence was heard by a jury and defendants took the stand and testified. Defendants urge that in such conflict of testimony the record should be substantially free from error. There does not seem to be any dispute as to this proposition, but the evidence as appears from this record shows that the defendants are guilty beyond any reasonable doubt. It appears that the defendants admitted everything that the witnesses said about them except that any money was passed. Not only the complaining witness

Edward Rozek testified to giving money to the defendants and was supported by his parents, but on the question of showing guilty knowledge and general scheme, a number of other witnesses testified to the same thing, who could not have had any desire to swear falsely in order to injure the defendants. There is no doubt but that Konkowski had promised to put these men on the police force and the jury found against the defendants as they upon the record were bound to do. Special attention is called to the testimony of Idzikowski who, when cross-examined in respect to giving money to Weidebusch, said he was sending the money to pay certain bills and when pressed was bound to admit that he had taken the numbers of the money and that he did not take a receipt from Weidebusch for the money. Weidebusch testified that this money was the money that he was returning to the Rozeks at the request of Idzikowski. There is also testimony that the defendants discussed this question of returning money and Idzikowski said to Konkowski, ''How about the money for those other applicants.''

The evidence in the record was properly a question for the jury to pass upon, and the jury having passed upon the question, the court properly passed upon the motions that were offered and properly entered judgment on the verdicts.

There is also complaint made of the instructions given. We have examined them but they seem to be proper and supported by the authorities, and we are of the opinion that the court in giving the instructions as they appear in this record fairly instructed the jury.

There is also some complaint made of the closing arguments of counsel. We have, however, considered the question and we are of the opinion that there was no error in the court's ruling upon the argument that was before the jury. From a careful consideration of the facts as well as the complaints that have been made by these defendants, we are of the opinion that

484

the court did not err in ruling upon the questions before the court. As we have stated, it appears from the record that the defendants were guilty beyond a reasonable doubt of a conspiracy to cheat and defraud the complaining witness of money upon the promise that his name would appear on the civil service list showing that he was qualified and fitted to be appointed to the police force. This fraud was perpetrated and became known when the list was published on September, 14, 1938, and Edward Rozek's name did not appear thereon, and prosecution was commenced well within the statutory period of limitations which commenced to run from the posting of the list.

For the reasons stated, the judgment of the court is affirmed.

*Affirmed.*

Denis E. Sullivan and Burke, JJ., concur.