THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN J. JORDAN, Defendant-Appellant.

(No. 56743;

First District (5th Division)—October 26, 1973.

Lester D. McCurrie, of Oak Lawn, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and James R. Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant, John J. Jordan, a Chicago police officer, was indicted, along with two other police officers, for bribery and for official misconduct in violation of sections 33—1(d) and 33—3(d) of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, pars. 33—1(d) and 33—3(d).) Following a bench trial, the court found Jordan guilty and sentenced him to five years probation, with the first ninety days to be served in the House of Correction under the work release program. The other two

police officers were found not guilty. Jordan appeals contending that the State failed to prove him guilty beyond a reasonable doubt.

The indictment charged that the officers:

> "committed the offense of bribery in that they, received money which they were not authorized by law to accept knowing that such money was tendered with intent to cause them to influence the performance of an act related to their employment or function as police officers, to wit: they, while working as Chicago police officers, received from Walter Knack, an ambulance driver of Scully-Walton Service, Inc., money which they were not authorized by law to accept, knowing that the said money was tendered because they, while acting in their official capacity as Chicago police officers, caused the ambulance of Scully-Walton Service, Inc. to be summoned for the purpose of transporting a patient to a hospital, in violation of Chapter 38, Section 33—1(d), of the Illinois Revised Statute 1969, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois."

It further charged that the officers:

> "committed the offense of official misconduct in that they, as officers of the Chicago Police Department, and while acting in their official capacity as police officers, knowingly accepted for the performance of an act a fee or reward which they knew was not authorized by law, to wit: they, while working as Chicago police officers accepted a fee or reward in the form of money from Walter Knack, an ambulance driver of Scully-Walton Service, Inc., which money they knew was not authorized by law, knowing that such money was tendered and received because they, while acting in their official capacity as police officers, caused the ambulance of Scully-Walton Service, Inc. to be summoned for the purpose of transporting a patient to a hospital, in violation of Chapter 38, Section 33—3(d), of the Illinois Revised Statute 1969, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois."

At trial, Amy Louise Brown, a fourteen year old girl, testified that at about 5:00 A.M. on May 22, 1970, her mother was injured when she fell down the stairs of their basement apartment at 5917 S. Emerald in Chicago and, when she went to summon assistance, she noticed two police cars and a squadrol in the alley in back of her home. She testified that she asked one of the white police officers in the squadrol to call Mid-America Ambulance Service for her mother and gave him her mother's green welfare card which entitled her mother to free medical assistance.

Afterwards, a white police officer in a squad car which was parked facing west in an alley off Emerald left his car, approached the squadrol, and was given the welfare card. The squadrol then left. The officer in the squad car gave her back the welfare card and she went inside to attend her mother until the ambulance arrived. The witness did not identify defendant or anyone else at the trial.

William Recktenwald, an undercover investigator for the Better Government Association, next testified that pursuant to his employment with that association he was employed as an ambulance attendant for Scully-Walton Ambulance Company, assisting Walter Knack. Knack did not know of his relationship with the B.G.A. According to Recktenwald, before he and Knack arrived at 5917 S. Emerald, Knack removed a ten dollar bill from his shirt pocket, folded the bill five times, and placed it in his right trouser pocket. As they approached their destination, he noticed a police car, number 716, facing west in an alley and saw a police officer with a flashlight and a green card, standing on the sidewalk. Knack, the driver, came around to the passenger side of the ambulance, directed him to tell some youths to leave the area near the back of the ambulance, and then approached the officer. Recktenwald went to the back of the ambulance, asked the youths to leave, and then opened the back door of the ambulance. Recktenwald testified that while he was behind the ambulance at 5:00 o'clock in the morning, he saw Knack reach into his right trouser pocket and hand the folded ten dollar bill to an officer, wearing a name tab, "Jordan." Later, on the way to the hospital with the victim, the ambulance was stopped by a police squadrol, number 771. An officer in the squadrol asked if Knack had "the stuff." Knack answered that he had given it to the fellow who had been left behind, and the officer said "Thanks." Recktenwald identified Jordan in court but was unable to identify the other officers.

Testifying under immunity, the ambulance driver, Walter Knack, essentially agreed with Recktenwald. He stated that he had given a police officer a ten dollar bill at 5917 S. Emerald. However, he did not identify defendant or anyone else at trial as having received the money.

It was stipulated that the defendants had been assigned to the police vehicles in question. The State then rested its case. The court granted a directed verdict in favor of the two officers who had been assigned to the squadrol citing inadequate identification.

Defendant Jordan testified that he was in the area of 5917 S. Emerald pursuant to a police call. An ambulance arrived as he was leaving the area. He asked the driver if he needed any help and when the driver responded negatively he left. He denied accepting anything from anyone.

The trial court found Jordan guilty and sentenced him to five years probation, with the first ninety days to be served in the House of Correction under the work release program. Before sentencing, Jordan reasserted his innocence.

OPINION

■■ Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. Defendant was charged with two offenses: bribery and official misconduct. Section 33—1(d) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 33—1(d)), the bribery statute under which defendant was indicted, provides that:

"A person commits bribery when: * * *

(d) He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror * * *."

This statute clearly indicates that a person's receipt of property is not alone enough to sustain a bribery conviction. Receipt of such property must not be legally authorized and such property must be accepted "knowing that such property * * * was * * * tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror * * *." In the case cited by the State (*People v. Gralewski*, 132 Ill.App.2d 755, 270 N.E.2d 566), the evidence was clear that the defendant solicited and accepted a remuneration in order to keep a witness from testifying. In the instant case, no evidence was produced at trial regarding any criminal purpose or intent on the part of defendant nor was there any evidence that defendant summoned that particular ambulance as alleged in the indictment. In these circumstances the most that can be said is that defendant may have accepted a gratuity. However, the acceptance of a gratuity without more will not sustain a conviction for bribery.

■■ Defendant was also charged with official misconduct. Section 33—3(d) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 33—3(d)), the official misconduct statute under which defendant was indicted, provides that:

"A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts: * * *

(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law."

As with the bribery statute, the acceptance of a fee or reward by a public officer or employee without more is not sufficient to sustain a conviction of official misconduct. In order to be guilty of official misconduct, in addition to accepting a fee or reward, the statute expressly requires a public officer or employee (1) to be acting in his official capacity, (2) to accept the fee or reward knowingly, (3) to accept it "for the performance of any act," and (4) to know that it is unauthorized by law. The record here is totally devoid of evidence relating to these other elements of official misconduct. No evidence was presented that defendant was acting in his official capacity. No evidence was produced regarding whether the remuneration was accepted knowingly or unknowingly. No evidence was shown that defendant accepted anything for the performance of an act and especially for causing any ambulance to be summoned as was charged in the indictment. Furthermore, even assuming that the acceptance of gratuities is unauthorized, no evidence was offered regarding defendant's knowledge that such conduct was unauthorized.

In these circumstances, we must reverse defendant's convictions on both charges.

Reversed.

DRUCKER, P. J., and SULLIVAN, J., concur.