The People of the State of Illinois, Plaintiff-Appellee, *v.* Stanley Thoms, Defendant-Appellant.

(No. 59995; )

First District (5th Division)—June 13, 1975.

Brunswick, Jemilo & Richardson, of Blue Island, and Tully & Roddy, of Chicago (Richard S. Jemilo and Joseph V. Roddy, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRETT delivered the opinion of the court:

Stanley Thoms, defendant, was found guilty after a bench trial of the crimes of bribery and official misconduct (Ill. Rev. Stat. 1969, ch. 38, pars. 33—1(d), (e), and 33—3(d)). He was placed on probation for a period of 2 years with the condition that he serve periodic imprisonment during the first year of his probation. Defendant appeals, arguing that the evidence was insufficient to establish his guilt beyond a reasonable doubt.

At trial, Louis B. Gemeinhardt testified that he and his partner, Edward Feeley, owned the Hollywood Motel located in Alsip, Illinois. Gemeinhardt testified that approximately 2 weeks after purchasing the motel, in February 1963, he received a message to contact the defendant. Subsequently, he met the defendant at defendant's home. At that time defendant informed him that running a motel was a very hazardous business since they had to deal with drunks, undesirables and women. Defendant offered to use his influence to take care of the property and see they did not run into any kind of problems. Defendant informed him

that the previous owner had been paying him $200 a month and it would be to his advantage if he continued the payments. Gemeinhardt testified that he told defendant that $200 was too much money, and after some negotiation defendant agreed to accept $100 a month. Gemeinhardt told him that he would have to discuss the matter with his partner and would get back to the defendant. In early March 1963, Gemeinhardt again returned to defendant's home and paid him the first installment of $100. During the next 5 to 7 months, Gemeinhardt paid the defendant $100 per month. The payments were all made in defendant's home except on one occasion they were made in his office at the police department. Gemeinhardt testified that Tom DiPaolo was the manager of the motel from 1963 until 1965. In 1966 Clarence Bastan was hired as the new manager.

Thomas DiPaolo testified that in February 1963, he became the manager of the Hollywood Motel in Alsip, Illinois. DiPaolo testified in May 1963, he went to defendant's home and gave defendant $50 upon orders of his employer, Mr. Gemeinhardt. DiPaolo testified that for the next 15 months while he was manager of the motel he would go to defendant's home on the first of every month and pay him $50 cash.

Clarence Bastan testified that on April 7, 1966, he became the manager of the Hollywood Motel in Alsip, Illinois. Shortly after assuming his duties on May 3, 1966, he met with the defendant in his office at the Alsip Police Station. At that time he gave the defendant $50. Each month thereafter he would meet with the defendant at defendant's home and pay him $50 cash. The payments were made to the defendant during the remainder of 1966, all of 1967 and until May of 1968. Bastan testified that in April or May 1968 business was down and he paid the defendant only $40 per month. Payments of $40 per month were made during the remainder of 1968. Bastan testified that in August 1968 he became the lessee of the Hollywood Motel. In December of 1968 or January of 1969, Bastan stopped making payments to the defendant. Bastan testified that all of the payments to defendant were entered on the daily sheets of the motel which were kept in the ordinary course of business. Bastan testified that 3 months after he stopped making the payments to the defendant, an Alsip squad car would be sitting on the north side of the driveway of the motel for an hour to and hour and a half at a time. The car would go away and would then return a short time later. Bastan called the mayor of Alsip to complain about the squad cars. The mayor told him that he would contact the chief of police. Bastan testified that when he called the mayor back the mayor stated that the police chief had informed him that Bastan had girls working at the motel.

Lawrence J. Kowalczyk testified that he is the owner of the Key Motel

in Alsip, Illinois. He first purchased the motel in 1960. The manager of the motel is Robert Dahms. Kowalczyk testified that in spring of 1963 he received a summons from the village of Alsip. The charges were dismissed by a justice of the peace who suggested that Kowalczyk stop by the police chief's office. Kowalczyk testified that he went into the defendant's office. At that time defendant told him, "We better take care of the boys." Kowalczyk testified that he asked if $50 would be sufficient and defendant stated that it would. Kowalczyk then gave the defendant $50.

Robert Dahms, the manager of the Key Motel in Alsip, Illinois, testified that he first became the manager of the Key Motel in Alsip, Illinois, in April 1963. Approximately a month after he began his employment he met the defendant in the parking lot of the Key Motel. At that time defendant stated that the motel would be O.K. if he were taken care of. Dahms gave defendant $50. The transaction was recorded on the daily sheets of the Key Motel. In December 1963, Dahms met with defendant at defendant's home and again gave 10 envelopes with $10 apiece in each envelope. Each envelope had the name of one of the police officers of the village written on it. Dahms testified that the police officers never received the envelopes with their names on it. Dahms testified that from 1964 until 1970 the Key Motel paid defendant $300 a year. Each payment occurred at defendant's home and was registered on the daily sheets of the motel. Dahms testified that prior to making the payments to the defendant a squad car would be parked across from the motel with radar equipment. After making the agreement with the defendant no other squad cars were parked across the street from the motel.

The daily sheets of the Key Motel and Hollywood Motel were admitted into evidence. They substantiated the testimony of the owners and managers of the motels.

It was stipulated that between 1960 and 1970 the defendant, Stanley Thoms, was the chief of police of the Alsip Police Department, Alsip, Illinois, and that the indictment was returned within 1 year after the responsible parties were notified of the alleged violations.

Stanley Thoms, defendant, testified that from 1960 to 1971 he was the chief of police for the village of Alsip. Defendant testified that prior to the trial he had never met Mr. Kowalczyk. Defendant denied that he ever received any money from Kowalczyk or Gemeinhardt or DiPaolo. Defendant testified that in 1965 Dahms came into the police station and asked him to be made a member of the auxiliary police force. Defendant stated that Dahms' age was against him and he was not capable of going through a strenuous training program. During the next 4 years Dahms approached him on 10 more occasions about being placed on the auxiliary

police force. Defendant testified that Dahms would become angry every time he was turned down. On July 15, 1971, as defendant was walking out of a Police and Fire Board meeting he passed by Dahms who stated that he had never given defendant a dime and wanted him to know that he would never testify against him. Dahms stated that he had to lie to cover up his own shortages. Defendant testified that Dahms again made similar statements on July 17, 1971, and March 14, 1972. Defendant denied that Dahms ever paid him any money.

Defendant testified that the Thursday prior to trial he met Bastan at the Gas City Gas Station in Calumet Park, Illinois. At that time Bastan told him that he was sorry, that he didn't think that the matter would go his far. Bastan stated that he only wanted to get defendant fired.

Raymond L. Termunde testified that from 1961 until 1972 he was mayor of the village of Alsip. Termunde testified that on March 14, 1972, he and the defendant were having lunch at the Pink Cloud Motel and Restaurant in Alsip, Illinois. As they began to exit the restaurant they met Dahms. At that time defendant asked Dahms why he had testified against him. Dahms replied that he never gave "Stan" a dime and that he had done it to cover up. Termunde testified that on several occasions Dahms had approached him about getting on as an auxiliary police officer. Termunde testified that defendant's reputation in the community for honesty and integrity was good.

It was stipulated that if Mrs. Joyce Arnold, a schoolteacher in Lemont, Illinois, and John Alsterda were called to testify they would testify that defendant's reputation in the community for honesty and integrity was good.

OPINION

Defendant's only contention on appeal is that the evidence did not establish his guilt beyond a reasonable doubt. Defendant argues that the evidence failed to establish that he had any criminal purpose or intent, that he was acting in his official capacity, that the remuneration was accepted knowingly, or that he accepted money for the purpose of causing the village of Alsip police vehicles to either be present or not present outside the motels involved.

Defendant was convicted of bribery and official misconduct. Section 33—1(d), (e), of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, pars. 33—1(d), (e)), under which defendant was indicted, defines bribery as:
"A person commits bribery when:

\* \* \*

(d) He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept

knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror; or

(e) He solicits any property or personal advantage which he is not authorized by law to accept pursuant to an understanding that he shall influence the performance of any act related to the employment or function of any public officer, public employee or juror."

Section 33—3(d) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 33—3(d)), under which defendant was also indicted, defines official misconduct as:

"A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:

\* \* \*

(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law."

Defendant in seeking a reversal relies upon *People v. Jordan,* 15 Ill. App.3d 672, 304 N.E.2d 713. In *Jordan,* this court reversed where a Chicago police officer had been convicted of bribery and official misconduct. The evidence adduced at trial demonstrated that an ambulance responded to a call for help. Upon arriving at the scene, the defendant, a Chicago police officer, was present with his partner. The defendant accepted a $10 bill from the ambulance driver, and the ambulance proceeded on its way. This court held that to sustain a conviction under the bribery statute or the official misconduct statute, the State must show more than the acceptance of a fee or reward by an employee. Since the evidence failed to establish that defendant was acting in his official capacity or that he had accepted the remuneration knowingly, or that he had accepted anything for the performance of a specified act, the conviction was reversed.

■■ In the case at bar, the defendant was the chief of police of the village of Alsip from 1960 to 1970. The testimony of the State's witnesses established that in the case of both motels the defendant actively solicited the money using his position as chief of police. Louis Gemeinhardt, the owner of the Hollywood Motel, testified that several weeks after purchasing the motel in February of 1963, he met the defendant at defendant's home. At that time defendant told him what a hazardous business running a motel was and offered to use his influence as police chief to take care of the property and to see that he did not run into any kind of problems. Thereafter, for a period of 6 years, the defendant accepted monthly payments from Gemeinhardt and the managers of the motel.

Lawrence Kowalczyk, the owner of the Key Motel, testified that shortly after purchasing that motel he received a summons from the village of Alsip. After his case was dismissed the justice of the peace suggested that he stop at the police chief's office. Kowalczyk testified that he met the defendant, who was the chief of police, in his office. At that time defendant told him, "We better take care of the boys." Thereafter, and for a period of 6 years, defendant accepted payments from Kowalczyk and the motel managers.

This testimony clearly established that defendant was using his office as chief of police of the village of Alsip in order to extract money from both motels. Defendant in both occasions actively solicited the money and accepted payments over a period of 6 years. Defendant argues that the testimony regarding the original solicitations in 1963 should not be considered on appeal since the statute of limitations has run as to those offenses. However, this evidence was admissible as showing a continuing course of conduct by the defendant. Defendant solicited and accepted the payments over a long period of time and there can be no question that he received the funds knowingly. Both motels had problems with squad cars parking near the motels when funds were not being paid to the defendant. However, as long as payments were being made to the defendant the squad cars disappeared. It is obvious from the evidence that the motel owners and managers did not want squad cars parked in front of their premises. After a complete review of all the evidence adduced at trial, we conclude that the defendant knowingly solicited and accepted funds which were unauthorized by law, using his office as chief of police with the intent to influence the performance of an act in his official capacity.

While defendant denied that he received money from either of the motels, the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to determine. (*People v. Clark*, 52 Ill.2d 374, 288 N.E.2d 363.) The evidence adduced at trial was sufficient to establish defendant's guilt on both charges beyond a reasonable doubt.

The judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.