THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY STEINMANN, Defendant-Appellant.

Fifth District  No. 77-252

Opinion filed February 23, 1978.

888

Thomas P. Carmody and Michael W. Klobnak, both of Phelps, Carmody & Kasten, of Carlinville, for appellant.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The defendant, Larry Steinmann, appeals from a judgment of the circuit court of Montgomery County entered upon a jury verdict finding him guilty of theft and official misconduct. He was subsequently sentenced to a two-year conditional discharge plus a fine of $500 on the theft conviction and a three-year conditional discharge plus a $1000 fine on the official misconduct conviction.

On the evening of August 10, 1973, defendant, then a lieutenant on the Litchfield Police Department, was dispatched to a location near Libbra's Tavern in Litchfield where he apprehended Harry Busby, the city's street and water superintendent. Earlier that evening Busby's wife had phoned the station to report that her husband had become intoxicated and had threatened to shoot their son-in-law. Upon arriving at the scene, defendant and two accompanying officers found Busby semiconscious and sitting in a parked car. Busby, who was cooperative in all respects, handed the defendant a loaded Smith & Wesson .38-caliber revolver. The officers present then discussed the matter and decided to allow Busby to return home. That night the defendant placed the weapon in his personal locker at the police station, since no common evidence locker then existed. He instructed the dispatcher to report the incident in the daily log.

On August 14, 1973, a meeting was held at the Litchfield City Hall to determine what action should be taken against Harry Busby. The defendant, the city attorney, the chief of police, the mayor, a city councilman and Harry Busby attended the informal meeting. It was the consensus of all present that Busby should be retained as street and water commissioner, that no charges should be filed in relation to the August 10, 1973, incident, but that Busby had no need for a gun. As the meeting adjourned it was suggested that Busby's gun be withheld for a period of time.

The evidence is conflicting as to the exact conversation at this point. The defendant testified at trial that the mayor and city attorney advised a tearful Busby that he had no business with the gun and recommended that he give it to the defendant, whereupon Busby nodded and shook the defendant's hand. The defendant believed that Busby had given him the gun outright. The chief of police testified that at the end of the meeting City Attorney Paul McWilliams approached Busby and said, "What do you need the gun for anyway? Why don't you just give it to him." Chief Dolahite was uncertain whether the last word was "him" or "them." At that time Busby and the defendant shook hands and the meeting ended. Busby, on the other hand, could not recall much of the conversation, but stated at trial that he never intended to permanently part with the gun. The mayor's testimony substantiated that the common desire was to withhold the gun from Busby until things quieted down with his son-in-

law. He personally instructed the defendant not to return Busby's gun at that time. The mayor stated that although he did not then contemplate what should be done with the gun in the future, he did not intend for the defendant to keep it as his own property.

After leaving the Litchfield City Hall, the defendant met a fellow officer, Richard Elledge, who inquired about the meeting. Defendant told Elledge that "Well, Busby give [*sic*] me the gun." The defendant then took the gun home and in the fall of 1973 used it as a back-up service revolver while his was being repaired. Other police officers, the dispatcher in particular, noticed that defendant was using the gun sometime after August 14, 1973. The defendant stated that he carried the gun all through the following winter. In addition, he used it to practice for the officers' mandatory qualifications shoot in the spring of 1974.

The events prompting the indictment in this case occurred on December 24, 1975, during a department Christmas party held at the police station. At approximately 2 o'clock that afternoon, prior to the defendant's 3 to 11 shift, the defendant and another officer, Terry Hand, agreed to trade pistols. The defendant gave the .38-caliber revolver he had received from Busby plus $15 in return for Hand's .22-caliber revolver. Upon learning of the Busby incident a few days later, however, Hand phoned the defendant at 12 o'clock, midnight, and questioned him about the ownership of the gun. Both Hand and the defendant testified that the defendant then admitted that he had gotten the gun from Busby, that he had no receipt, but that if Hand did not approve of the transaction the defendant would willingly retrade the gun. When Hand asked what he should do if Busby requested the gun from him, the defendant responded, "Well, just give him the gun back and I will give you the .22 back." Hand proceeded to investigate further and discovered a receipt in the police file reflecting that the gun was obtained from Harry Busby on August 10, 1973. The receipt was dated August 14, 1973, and was signed by the defendant. Hand later interviewed Busby who stated that he never intended to make a gift of the gun and expected to get it back some day. Armed with this information, Hand contacted the sheriff and on December 31, 1975, the Montgomery County grand jury issued a three-count indictment against the defendant. On February 3, 1977, a jury found defendant guilty of one count of theft and two counts of official misconduct. The court subsequently set aside the guilty verdict on count III for official misconduct since it determined the indictment had failed to charge an offense.

As substantial questions are raised concerning the effect of the other two counts of the indictment, we quote them at length:

"COUNT I

The Grand Jury charges: That on the 24th day of December

1975, in Mongtomery County, Illinois LARRY STEINMAN [sic] committed the offense of THEFT in that Larry Steinman [sic] did knowingly exert unauthorized control over property of Harry Busby, being a Smith & Wesson .38 caliber revolver serial number D523362, having a total value of less than $150, and used the said property in such a manner as to deprive the owner permanently of the use and benefit of said property in that he transferred ownership of said firearm to Terry Hand without the authority of Harry Busby and without legal authority in violation of Chapter 38, Paragraph 16—1(a)(2)* * *.

COUNT II

The Grand Jury further charges: That on the 24th day of December 1975, in Montgomery County, Illinois LARRY STEINMAN [sic] committed the offense of OFFICIAL MISCONDUCT in that Larry Steinman [sic], a police officer of the City of Litchfield, Illinois did knowingly perform an act which he knew that he was forbidden by law to perform in that acting in his official capacity as a Litchfield, Illinois police officer, he seized a certain Smith & Wesson .38 caliber revolver serial number D523362 from Harry Busby, said firearm being the property of Harry Busby and that after seizing said weapon he sold said weapon to Terry Hand without the authority of Harry Busby and contrary to the laws of the State of Illinois in violation of Chapter 38 Paragraph 33—3(b)* * *."

Defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Throughout the trial the defendant maintained that he honestly, though mistakenly, believed the gun had been given to him for his personal use; thus, the "mens rea" necessary to convict him of a crime had not been adequately shown. The State argues that the defendant's words and actions negate such an interpretation. Basically, the State relies on two statements allegedly made by the defendant on August 10, 1973, and on December 24, 1975. After returning to the station following the Busby incident on August 10, 1973, the police dispatcher, John Shade, questioned the defendant about the future disposition of the gun, to which the defendant allegedly responded that he did not know, he might possibly keep it. This statement is not helpful in ascertaining defendant's guilty state of mind for not only is it susceptible to many interpretations, but shortly thereafter the defendant ordered a report of the incident, notified the chief of police and attended the August 14, 1973, meeting. The second "incriminating" statement cited by the State was made to another police officer who witnessed the December 24, 1975, transfer of the .38-caliber revolver. When asked where he had obtained the gun, defendant answered in effect that it was

none of the officer's business. Again, this statement is inconclusive since defendant had never attempted to hide the facts surrounding his acquisition of the revolver; indeed, on August 14, 1973, he told Richard Elledge that Busby had given him the gun and when questioned by Hand nearly 2½ years later, defendant readily admitted he had received the gun from Busby.

Finally, the State alleges that the defendant's belief that the gun had actually been given to him was incredible in light of his experience on the police force. While defendant's misunderstanding of Busby's intentions may be somewhat unjustified, from the evidence we cannot say and do not think a reasonable person could say that defendant's actions were dishonest. Surely the sequence of events in this case was atypical from the outset. There was an understandable attempt by all concerned to handle the episode as diplomatically as possible in order to avoid embarrassment to Busby as well as to the city itself.

It is a fundamental principle of our criminal justice system that one may not be convicted of a crime unless it is shown beyond a reasonable doubt that he acted with the requisite criminal intent. (*Phelps v. People,* 55 Ill. 334.) In *People v. Baddeley,* 106 Ill. App. 2d 154, 245 N.E.2d 593, the court reversed a jury finding of guilty where in its view the evidence failed to adequately prove defendant's criminal intent. In that case defendant, an automobile repair man, had taken possession of another's auto under the mistaken, albeit honest, belief that he had a right as a lienholder to do so. The following analysis by the court is particularly relevant to our case:

> "Although an intent to steal may ordinarily be inferred when a person takes the property of another, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of theft. [Citation.] It has long been the rule in many states throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to another's property, negates an intent to deprive the owner permanently of his property." 106 Ill. App. 2d 154, 158-59.

In *People v. Ibom,* 25 Ill. 2d 585, 185 N.E.2d 690, the Supreme Court of Illinois stated that the State's duty is to establish its theory of the case by proof of facts that admit no reasonable doubt of guilt. (See also *People v. Stallcup,* 10 Ill. App. 3d 153, 294 N.E.2d 21.) Concerning the corresponding obligation of an appellate tribunal, the supreme court has announced:

> " 'It is the further duty of a reviewing court, where a verdict is returned by a jury in a criminal case, not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's

guilt and to create an abiding conviction that he is guilty of the crime charged.' *People v. Qualls*, 21 Ill. 2d 252; *People v. Downen*, 374 Ill. 146." *People v. Ibom*, 25 Ill. 2d 585, 593, 185 N.E.2d 690.

■■ In our opinion the facts and circumstances surrounding the crucial events in this case create a grave doubt as to the defendant's guilt. Lt. Steinmann testified that throughout the entire period he believed the gun had been given to him personally, not merely entrusted to him as a police officer. We note that Busby's own actions tend to strengthen the credibility of the defendant's belief. It was undisputed at trial that although Busby had demanded the return of his gun at least three times between August 11 and August 14, 1973, he never again requested it after the August 14, 1973, meeting. In addition, the defendant openly treated the gun as his personal property from that moment forward. Specifically, just minutes after the meeting on August 14 the defendant informed Officer Elledge that Busby had given him the gun, he used the gun as a service revolver throughout the fall and used it to practice for the qualifications shoot in the spring. Finally, he arranged for the transfer of the gun to a fellow officer and effected the trade at the police station in the presence of other officers. Certainly these are not the actions of a thief. The totality of this evidence compared to the slight evidence of his guilty knowledge fail to instill in us an abiding conviction of defendant's guilt.

Obviously, our finding of no criminal intent with regard to the theft offense likewise negates defendant's guilt of the official misconduct offense. Even though we hold that the State has failed to prove the defendant guilty of theft and official misconduct beyond a reasonable doubt, we also recognize that this case may be reviewed by the supreme court. We will therefore rule on the other contentions made by the defendant.

■■ The defendant also contends that the statute of limitations bars his prosecution on the theft charge. The indictment charged the defendant with having committed the offense of theft on December 24, 1975, by transferring the .38-caliber gun (*i.e.*, exerting unauthorized control) to Terry Hand in such a manner as to deprive the owner permanently of its use and benefit. The defendant argues, and we agree that, if at all, the theft occurred two to three months after August 14, 1973, when the defendant failed to return Busby's gun, thus rendering his control unauthorized. The State contends that the theft in this case was a continuing offense beginning a reasonable period of time after August 10, 1973, when defendant failed to charge Busby, but not consummated until December 24, 1975, when defendant transferred the gun to Hand. It was the State's position that it could not have charged the defendant with theft until the transfer on Christmas Eve; hence, defendant was charged well within the statute of limitations.

While at first glance this argument seems to have some merit, upon further analysis its infirmity becomes apparent. Were the State's argument valid, defendant could have retained the gun and escaped prosecution indefinitely. Such a result was clearly not intended by the legislature when it enacted the theft statute in question. As stated in *People v. Helm,* 10 Ill. App. 3d 643, 646, 295 N.E.2d 78:

> "Also par. 15—8 (Ill. Rev. Stat. 1969, ch. 38, par. 15—8) states that ' "obtains or exerts control" over property, includes but is not limited to the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property.' Thus, one is a thief when he knowingly exerts unauthorized control through mere possession of the property, intending permanently to deprive the owner of its use."

Thus, assuming defendant acted with the requisite intent, his possession of the gun after it should have been returned to Busby constituted theft.

■■ We must now decide whether this is a continuing offense in the sense that each day defendant retained unauthorized possession of the gun he prevented the statute from running. This result attains in situations of conspiracy where the statute does not begin to run until the commission of the last overt act in furtherance thereof (*Cooke v. People,* 231 Ill. 9, 82 N.E. 863; *People v. Konkowski,* 308 Ill. App. 470, 32 N.E.2d 352, *aff'd,* 378 Ill. 616, 39 N.E.2d 13), and public nuisances (*People v. Jones,* 329 Ill. App. 503, 69 N.E.2d 522); however, a contrary holding has been reached in cases of obstruction of justice (*People v. Criswell,* 12 Ill. App. 3d 102, 298 N.E.2d 391), and wife abandonment. In *People v. Heise,* 257 Ill. 443, 451, 100 N.E. 1000, the supreme court explained:

> "The act of abandonment can occur but once, and, after that has taken place, immediately upon the neglect and refusal to maintain and provide for the wife the crime becomes complete and the Statute of Limitations begins to run. The continued neglect and refusal, from day to day, to maintain and provide for the wife do not constitute the commission of another offense * * *."

So, too, under the circumstances of our case theft could occur only once—when defendant first exerted unauthorized control over the gun, that is, within a reasonable period after August 14, 1973. In contrast, we recognized that under different facts theft may be a continuing offense. thus, in *People v. Patrick,* 38 Ill. 2d 255, 230 N.E.2d 843, cited by the State, the court accepted the notion that an indictment might charge one offense of theft either by alleging a single act or a series of successive *takings* comprising one offense, as where an employee embezzles funds over a long period of time. (See *People v. Adams,* 106 Ill. App. 2d 396, 245 N.E.2d 904.) Clearly such a situation is inapposite to the facts before us.

It has long been the express policy of our courts to liberally construe

statutes of limitation. (*Beattie v. People*, 33 Ill. App. 651; *Johnson v. People*, 94 Ill. 505.) The rationale behind this policy was succinctly stated in *People v. Ross*, 325 Ill. 417, 156 N.E. 303:

> "A statute of limitation in criminal cases is an act of grace; a surrendering by the sovereign of its right to prosecute. The statute is not a process to be strictly and grudgingly applied, but an amnesty declaring that after a certain time oblivion shall be cast over the offense and that the offender may from thenceforth cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Such statutes must be liberally construed, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition by the legislature of the fact that time gradually wears out proofs of innocence and a notification that a fixed and positive period established by it destroys all proofs of guilt." (325 Ill. 417, 421.)

If the statute of limitations is to have any meaning at all, it must apply to bar prosecution of cases such as the one before us where the facts comprising the offense as well as the defense occurred nearly 2½ years prior to the indictment.

At the close of all the evidence the defendant made a motion for a directed verdict as to count I on the basis that the statute of limitations had run. During argument on this motion the State shifted somewhat its position with regard to the statute of limitations issue and contended that, in any case, the extended statute of limitations would apply in this instance. In its brief before this court, the State further cited section 3—6(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 3—6(a)(2) for the proposition that the statute of limitations began to run when Busby learned that the defendant had transferred his gun to Hand. Defendant on the other hand contends that the extended limitation period was neither pleaded nor proved; therefore, under the authority of *People v. Munoz*, 23 Ill. App. 3d 306, 319 N.E.2d 98, and its progeny its application has been waived. We need not rule on the waiver argument since, in our opinion, even were the extended statute of limitations applicable in this case, that period had also elapsed by the time of the indictment in this case. The section of the statute relied upon by the State provides:

> "(a) A prosecution for theft involving a breach of a fiduciary obligation to the aggrieved person may be commenced as follows:
>
> * * *
>
> (2) In any other instance, within one year after the discovery of the offense by an aggrieved person, or by a person who has legal capacity to represent an aggrieved person or has a legal duty to

report the offense, and is not himself a party to the offense; or in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense. However, in no such case is the period of limitation so extended more than 3 years beyond the expiration of the period otherwise applicable." Ill. Rev. Stat. 1975, ch. 38, par. 3—6(a)(2).

■■■ The undisputed facts of this case indicate that sometime in the late summer or early fall of 1973 various members of the police force became aware that Busby's gun was being used by the defendant as his personal property. Surely these are persons with a legal duty to report the offense as contemplated by the statute. We do not find the case of *People v. Wenstrom*, 43 Ill. App. 3d 250, 356 N.E.2d 1165, relied upon by the State at trial, controlling on this issue. That case, construing the meaning of "legal duty" as used in section 3—6(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 3—6(b)) held that although a deputy sheriff discovered but failed to report offenses of fellow deputies, the extended statute of limitations did not commence to run upon his discovery. However, the facts in that case were quite peculiar in that one of the defendants had threatened to kill the deputy sheriff if he should report the offense. In any case, the State had the burden of proving the application of the extended statute of limitations and we believe it failed to meet its burden in this case. Just as the *Wenstrom* court felt it would be a "gross miscarriage of justice" to impute the deputy's knowledge to his superiors, so we feel that it would be patently unfair not to do so where, as here, the defendant's actions were at all times open, straightforward, and anything but intimidating. Accordingly, whether analyzed under section 3—5 or 3—6 (Ill. Rev. Stat. 1975, ch. 38, pars. 3—5, 3—6), the statute of limitations barred the theft prosecution in this case.

Defendant also contends that the State failed to prove him guilty of official misconduct. Section 33—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33—3(b)) provides that a public officer or employee commits official misconduct when, *in his official capacity,* he knowingly performs an act which he knows he is forbidden by law to perform. The indictment, quoted above, specifically charged that defendant committed this offense by seizing Busby's gun and by selling said gun to Terry Hand. Defendant contends that his act of seizing the gun, while done in his official capacity, was wholly lawful to insure the public peace. We agree. The subsequent sale of the gun is the gravamen of the offense charged. Through its bill of particulars and by virtue of its arguments on defendant's various motions at the close of the evidence, the State sought to expand the scope of the charge by including the failure to charge Busby, and the retention and use of the gun as acts which defendant knew he was forbidden by law to perform.

■■ It is fundamental that the contents of a bill of particulars cannot be resorted to for the purpose of expanding the charge actually made in the indictment. (*People v. Johnson*, 363 Ill. 45, 49, 1 N.E.2d 386; *People v. Westrup*, 372 Ill. 517, 25 N.E.2d 16, *cert. denied*, 310 U.S. 642, 84 L. Ed. 1410, 60 S. Ct. 1089.) Indeed, the trial court recognized the discrepancy when it refused to instruct the jury regarding the defendant's statutory obligation to return the gun absent pending charges. Thus, notwithstanding that the acts described in the bill of particulars may be construed as having been committed within defendant's official capacity, these acts cannot be relied upon to sustain his conviction for official misconduct as they were in no manner mentioned in the indictment.

■■ Defendant also contends that the language of the indictment fails to charge that the sale of the gun was performed in defendant's official capacity. While we agree that the indictment could have been more artfully drawn, it is reasonable to conclude that the insertion of the conjunctive "and" in such a strategic position indicated that the official capacity phrase modified the sale as well as the seizure of the gun. Therefore, it was not error for the court to refuse to dismiss count II of the indictment.

We now consider whether or not it can fairly be said that the act charged, the sale of the gun, was in fact committed by defendant in his official capacity as a police officer. In deciding this issue we must necessarily examine the objective of the official misconduct statute, that is, precisely what type of activity does this statute seek to punish? From a close review of the pertinent cases, we believe that the offense was designed to reach those situations where a public officer or employee has in some fashion exploited his official position to the detriment of the public good.

In *People v. Jordan*, 15 Ill. App. 3d 672, 304 N.E.2d 713, Officer John Jordan was indicted for bribery and official misconduct pursuant to his receipt of $10 from an ambulance driver arriving at the scene of an accident assisted by the defendant. The court reversed the conviction citing the lack of evidence that defendant was acting in his official capacity at the time as one of its grounds therefor. Thus, not all actions of a police officer, even those performed while on duty, are done in one's official capacity.

On the other hand, a police officer need not be in uniform and on duty to perform an act within his official capacity. For example, in *People v. Thoms*, 30 Ill. App. 3d 229, 332 N.E.2d 538, *cert. denied*, 424 U.S. 968, 47 L. Ed. 2d 735, 96 S. Ct. 1465, and *People v. Bouse*, 46 Ill. App. 3d 465, 360 N.E.2d 1340, police officers were held to have been acting within their official capacities when accepting bribes while off duty. It was clear in both cases that the defendants had manipulated their offices to effectuate

the wrongful transfer of money. The court's reasoning in *People v. Bouse,* 46 Ill. App. 3d 465, 360 N.E.2d 1340, is particularly helpful in determining which acts are performed in one's official capacity:

"The defendant, although wearing plain clothes, had the status of a peace officer and was present in the offices of MLA Towing Company in his official capacity. * * *

Furthermore, defendant in conversation with Perry told him on two separate occasions, first on the telephone and then in person at his office, that he was the police officer who had stopped his driver earlier that day. He also specifically related how he could have used the power of his office by issuing traffic citations to Perry and his driver and by sending his driver to jail. * * * The trial court could only conclude from this testimony that defendant was present in his official capacity as a police officer and accepted the money in consideration for his failure to perform a function of his office." (46 Ill. App. 3d 465, 471.)

Similarly, the court in *People v. Thoms,* 30 Ill. App. 3d 229, 332 N.E.2d 538, *cert. denied,* 424 U.S. 968, 47 L. Ed. 2d 735, 96 S. Ct. 1465, specifically found that "defendant was using his office as chief of police of the village of Alsip in order to extract money from both motels." 30 Ill. App. 3d 229, 234.

■■ The record in this case is totally devoid of any evidence that defendant used the power attached to his position as lieutenant of the Litchfield Police Department to influence Officer Hand when he traded the gun. The sale of the gun, the only act forming a basis for the official misconduct charge in the indictment, was accomplished in his individual and not in his official capacity. Thus the State failed to prove a requisite element of the crime charged.

Accordingly, we reverse the defendant's convictions on both charges.

Reversed.

EBERSPACHER, P. J., and KARNS, J., concur.